Name: Lisa R. Jackson

Address: PO Box 552

Rialto, California 92377

Phone: 909-419-1197

~~Fax:~~ Email: forci2244@gmail.com

In Pro Per, PLAINTIFF

FILED
CLERK, U.S. DISTRICT COURT

# 3/2/2021

CENTRAL DISTRICT OF CALIFORNIA

BY: _____LM_____ DEPUTY

194
Fee
Paid
S/60

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LISA R JACKSON

an individual

                    Plaintiff

v.

LOUIS DEJOY, Postmaster General

UNITED STATES POSTAL SERVICE (USPS)

                    Defendant(s).

CASE NUMBER:   5:21-cv-00379 AB (AGR)

PLAINTIFF'S COMPLAINT AND CAUSE OF ACTION

NEGLIGENCE, HARASSMENT,

RETALIATORY DISCRIMINATION AND

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

( Enter document title in the space provided above)

### I. JURISDICTION

1. This Court has jurisdiction under the claims for Negligence, Harassment, Retaliatory Discrimination and Negligent Infliction of Emotional Distress (NIED), pursuant to (Title VII THE CIVIL RIGHTS ACT of 1964).

2. The Court has jurisdiction over Plaintiff LISA R. JACKSON, an individual, personal Injury RELIEF, including Emotional Distress, Pain and Suffering, Extreme Hardship and loss Wages.

Plaintiff's Complaint
CV-127 (09/09)

_1_
Page Number

PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

## II.  VENUE

3. Venue is proper pursuant to 28 USC 1392, as to all Defendants, Louis DeJoy, Postmaster General and it's Agency. Plaintiff Lisa R. Jackson (hereinafter) alleges that Defendants conducts business and has location in this County, and the event complained of, occurred in this County of San Bernardino.

4. Plaintiff, Lisa R. Jackson was an employee to the Defendants Louis DeJoy Postmaster General, at the United States Postal Service (USPS), for approximately 5 months and 18 days from July 29, 2019 through January 15, 2020, of the city of Redlands, County of San Bernardino State of California.

5. Plaintiff, Lisa R. Jackson, herein, alleges that at all times relevant to this litigation, Defendants, Louis DeJoy, Postmaster General, United States Postal Service (USPS) is a California Corporation organized and existing pursuant to the laws of the State of California, which conducted and conducts it's business, in the state of California. Louis DeJoy Postmaster General and their Agency, were and is at all relevant times doing business in the State of California.

Plaintiff's Complaint
CV-127 (09/09)

2
Page Number
PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

## III. PARTIES

6. Plaintiff, LISA R. JACKSON, an individual and at all times mentioned herein, is currently homeless and resides in vehicle in the City of Rancho Cucamonga, County of San Bernardino, State of California.

7. Defendant, Louis DeJoy, Postmaster General and it's Agency of the United States Postal Service (USPS) is and at all times alleged herein was and still is a California Cooperation with its Principal Place of Business in the City of Redlands, County of San Bernardino, State of California.

## IV. INTRODUCTION

8. Plaintiff, LISA R. JACKSON, an individual, action arises against the Defendant's Louis DeJoy, Postmaster General, United States Postal Services (USPS) of Negligence, Harassment, Retaliatory Discrimination, and Negligent Infliction of Emotional Distress (NIED), during Plaintiff's employment at the United States Postal Service (USPS). The Defendant's ignored their legal responsibility by violating their duties owed to the Plaintiff, Lisa R. Jackson, an individual. By not taking action of multiple complaints of a co-worker who targeted me, disrespected me, bullied me, treated me different from the rest, and made three attempts to harm me the Plaintiff physically. This included Plaintiff, Lisa R. Jackson, harassed and targeted, bullied, and treated differently

3.

1  from the rest by my former Supervisor Maryhelen
2  Campos, who is employed by the United States Postal
3  Service. Supervisor Maryhelen Campos ignored and
4  allowed the co-worker Mail Handler Pamela Harrison
5  to target me the Plaintiff from August 2019
6  through January 15, 2020. Supervisor Maryhelen
7  Failed to Act on all complaints about former
8  co-worker Mail Handler Pamela Harrison. As a
9  result of the Defendent's negligence, Plaintiff
10  LISA R JACKSON felt force to address the issues
11  to Mail Handler Pamela Harrison on January 15, 2020
12  Wednesday in the morning hours, which led into a
13  Confrontation between co-worker Pamela Harrison
14  and myself the Plaintiff. I the Plaintiff Lisa R
15  Jackson made no threats of any kind to co-worker
16  Pamela Harrison, yet, I the Plaintiff was the only
17  one who received harsh immediate disciplinary action
18  off of co-worker Pamela Harrison's one Complaint of
19  me the Plaintiff. I the Plaintiff felt force to resign
20  after Union Representative Theresa Leon who was
21  accompanied with Supervisor Maryhelen Campos, informed
22  me the Plaintiff, that Supervisor Maryhelen was
23  going to fire me the Plaintiff. I the Plaintiff also
24  made multiple Complaints to Supervisor Maryhelen
25  Campos, Head Supervisor Mark Clark who also
26  ignored my complaints of both Supervisor Maryhelen
27  and co-worker Pamela because the problem persisted
28  therefore Supervisor Mark Clark also Failed to Act on my

serious complaint to avoid a hostile work environ-
ment. As a result of their neglience and
retaliatory discrimination, Plaintiff suffered severe
emotional distress, fear, pain and suffering due
to loss wages, flash backs, worrying about my
life changes because now im homeless sleeping in
the car away from my youngest daughter. Now im
subjected to hate crimes, harassment on the street,
sexual harassment, in fear of my life, I the Plaintiff
have a history of depression disorder which
this problem only made my depression worsen.
I the Plaintiff have to see a Psychiatrist so I the
Plaintiff don't sink too deep into my depression
disorder.

## V. STATEMENT OF FACTS

1. On July 29, 2019, Monday, at 6:00 am I the
Plaintiff started my employment as a Mail Handler
Assistant from 6:00am to 2:30pm five days out the
week at the United States Postal Service. I the
Plaintiff was assigned to Supervisor Maryhelen Campos
on July 30, 2019 in the Apps Department with a
very small group 12 employees, 5 were permanent
Mail Handlers, 7 were Mail Handler Assistants.
Which we all had shared the same duties, except
for the loading area and the same Supervisor
Maryhelen Campos who would do safety standups
and addressed other off the topic issues in the early

Plaintiff's Complaint

CV-127 (09/09)                    PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

morning in the beginning of shift before sending
her co-workers off to their assigned stations.
I the Plaintiff was a very hard worker showed up
on time each day, I the Plaintiff would even show
up on my off days accidently a few times
because I was dedicated to my new job. I
was so happy about this particular job because
it was my dream job, I the plaintiff return
from all my lunch and short breaks on time.
I was very kind and pleasant, nervous but
willing to adapt. I the Plaintiff gave my all
for a chance at a career opportunity. I passed
my (90 Days) period with a compliment from an
employee whose been there at the United States
Post Office for years a well known mechanic, who
worked on the machines in the warehouse he said
to me, "You're a dedicated worker." That made
my day because no one praised me for my work
ethics not even my own Supervisor Maryhelen
I had to keep asking her how am I doing even
when I passed my (90 Days) period. She never
once praised me for my hardwork, voluntarly,
only if I dragged it out of her by looking at her
in her eyes say, "How am I doing?" "Did I pass my
90 Day Period yet?" Then I eventually just gave up
caring about how she felt and just continued on
doing my best, even after my (90 Days) were up.

2. In the beginning of August 2019, in the morning hours Supervisor Maryhelen Campos assigned me the Plaintiff to work and be trained by Mail Handler Pamela Harrison on the Apps as a Sweeper this area is very intense and very demanding of your full body and strength both mental and physical. On my first day training with co-worker Pamela Harrison, she kept taking off, leaving the area for long periods of time, leaving me the Plaintiff lost, confused, bored, clueless on what to do. I the Plaintiff notice another co-worker working on the same side as I, her name was Paula Cerjak. I the Plaintiff asked her, "Will you help me, I have no clue of what im doing, the lady that's supposed to be training me, keeps on taking off." Paula Cerjak said, "Sure." Even though she talked the whole entire time about her ex-wife and little boy, I the Plaintiff kindly listen, as she answered all my questions and trained me in between her expressing her deep feelings for her ex-lover. Soon co-work Pamela Harrison returned back to the work area only to find Someone else was helping me. When I the Plaintiff returned immediately upon noticing co-worker Pamela Harrison had returned, Pamela started ignoring and kept giving me evil stares, she completely gave up on training me. I the Plaintiff

complained to Supervisor Maryhelen Campos, her
response was "Oh that just how she is." As
time would go on Pamela would not train me
the Plaintiff. She would yell, "What, What, I don't
know, I don't know!" Back to Supervisor Maryhelen
I the Plaintiff would say, "She's still not training
me, Pam keeps looking at me like im stupid
and answering me in a mean tone." Supervisor
Maryhelen would just listen but not respond.
Then finally one day Supervisor Maryhelen Campos
started assigning other co-workers to train me,
without addressing the issue with co-worker
Pamela Harrison. Pamela Harrison made it
clear by her actions towards me that she disliked
me. This was only the beginning of my nightmare
working at the United States Postal Service. An
female employee driver, drove up to me the
Plaintiff, and said, "Be careful of what you say
to Pamela, thats Mary's favorite, their best-
friends." I the Plaintiff said, "Really, well that
explains a lot." Then she continued on her way.

3. Mail Handler Pamela Harrison began
targeting me by yanking equipment away
from me, snatching placards out of my
hands, whenever im working on the Semi-
Auto sending mail through the camera's, Pamela
would be in charge of loading heavy bundles of

1  magazines and books. She would toss them so
2  high and she'd tossing them towards me almost
3  hitting me, she would not apologize just kept
4  on tossing, which was very unsafe for me
5  and the machine. Other co-workers would have
6  the same duty at time but were very careful
7  patient and we would work hard together,
8  without breaking any safety rules.
9
10     4. Wednesday August 21, 2019 approximately
11  11:00 am in the Apps department, I the Plaintiff
12  Lisa R. Jackson was assigned to the Culler-Belt
13  alongside with Mail Handler Assistant Genevieve
14  Turner. I the Plaintiff was assigned earlier
15  that morning on the Semi-Auto but Super-
16  visor Maryhelen switch me to help out
17  co-worker Genevieve. On that particular
18  day the temperatures were very high over
19  100 degrees extremely hot, and the work
20  was very intense heavy bundles of big books
21  and bundles of magazines that were very
22  stubborn, very difficult to load onto the culler
23  belt. I the Plaintiff became very dehydrated.
24  I the Plaintiff asked my Supervisor Maryhelen
25  Campos, if I could drink soda on the floor,
26  because I notice other co-workers did and
27  whenever Supervisor Mack Clark would fill in
28  for Supervisor Maryhelen Campos, he would allow us

Plaintiff's Complaint

9
Page Number

CV-127 (09/09)          PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

to drink sodas on the workroom floor, I only
asked Supervisor Maryhelen Campos because
Mark Clark was known to be real easy going
and laid back and Maryhelen Campos was
the opposite of him. Supervisor Maryhelen's
answer about the soda on the floor, was No.
I the Plaintiff then asked her, "Could I just
drink one in the break room, I'm out of
breath." Maryhelen said, "That would be too
much on you." I said "Well can I go purchase
water out the vending machine?," Maryhelen
said, "I rather you stay on the Culler-Belt."
I said to her, "I'm very drained and very hot."
Maryhelen said again, "I want you to stay on the
Culler-Belt because we need to get it done."
(I was on my monthly period) I continued working.
While I was working on the Culler-belt I felt
faintest and diezy. We were loading mail that
caused us to work harder than normal. When
Maryhelen called lunch at 12:00 p.m. I told her,
"I almost fainted, I needed water or something cold
to drink really.

5. Beginning of September 2019, I the Plaintiff
was assigned to the Semi-Auto on side 2 of the
Apps. Supervisor Maryhelen announced over the
loud speakers, "Pull-Down!" I the Plaintiff informed
Olga Perez a co-worker, that I needed to run to the

Plaintiff's Complaint

CV-127 (09/09)          PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

restroom, I noticed while using the restroom one
of the co-workers (female) whose no longer
working for the post office, What seemed to me,
as if she was peeping through the cracks of
the restroom stall, I the Plaintiff was in a
This particular restroom had 5 toilet stalls
and they were all empty except for one which
I was in at the time. I believe she was checking
to see if I was really using the toilet. When I
got done using the restroom the co-worker
tried to pretend to be washing her hands that's
what it seemed to me. When I returned back to
work everyone on side 2 of the Apps, seemed very
upset that I didn't help pull-down, they had a total
of five employee's on side two which is more than
enough help. My stomach was cramping very badly,
my period had just started, I was in a complete mess.
When I returned to the Semi-Auto my Supervisor
Maryhelen came up to me and started yelling and
screaming at the top of her lungs that everyone
stopped what they were doing to watch. She said,
"YOU WERE GONE TO THE RESTROOM FOR 30 MINUTES!!"
Which Supervisor Maryhelen constantly repeated,
herself, "WHY WERE YOU GONE SO LONG!" I the Plaintiff
said, "First of all, I was only gone for about 15 minutes".
Supervisor Maryhelen only got louder and louder
embarassing me in front of the other co-workers,
I the Plaintiff said "Mary! Mary! Mary! Why are you

Plaintiff's Complaint

CV-127 (09/09)          PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

1   yelling at me. I really had to go!" Supervisor Maryhelen
2   said repeatedly, "You're supposed to help out on the
3   pull-down, why were you gone so long, you're not
4   supposed to leave during pull-down!" I said, "Mary
5   I had to POOP OKAY! there I said it, sometimes the
6   body has a mind of its own!" Supervisor Maryhelen
7   Campos stormed away angry. I was humiliated
8   force to embarrass myself in front of all the
9   co-workers who were standing around and the
10  driver who also watch Supervisor Maryhelen
11  belittle me and bully me, by yelling out my
12  personal business. I the Plaintiff was left in
13  tears during that time and responded back to
14  Supervisor Maryhelen Campos out of frustration
15  because she would not let up, she just kept
16  yelling and screaming my personal business so
17  loud that everyone in the warehouse area could
18  hear and if they couldn't hear clearly they
19  knew about it.
20
21       6. Beginning of October 2019, in the early
22  morning during standup with Supervisor
23  Maryhelen Campos and the rest of the team
24  members, After Maryhelen was done speaking
25  to the group, I asked her, "Are we doing stand-
26  ard or 2c?" Supervisor Maryhelen began with a
27  mean tone of voice and said, "You been here long
28  enough to know this Why you don't know this?" I

12

1    told her, "I'm supposed to ask questions, it seems
2    like everyone gets mad when I ask for help.
3    Pamela doesn't want to help me, you yelled at
4    me, looking at me very mean Mary, I'm just
5    going to stop asking questions, you treat me
6    like this in front of everyone." Maryhelen
7    then said "No ask questions." I the Plaintiff told
8    her, "I'm tired of getting yelled at, getting
9    mean looks and being disrespected, co-worker
10   Toccara Williams said in a mean tone of voice,
11   "Don't PUT THAT THERE!" Toccara was talking about
12   a wire (equipment) that was loaded with mail.
13   Supervisor Maryhelen replied, "Well if you can't get
14   alone with your team, then this is not the job
15   for you." I the Plaintiff said, "Right." Later I spoke
16   to Supervisor Maryhelen Campos again, and
17   told her, "My job shouldn't be determined on if
18   someone likes me or not. It should be determined
19   on my work ethics." Supervisor Maryhelen said,
20   "The reason I got upset earlier, because you said
21   Genevieve showed you everything," I the Plaintiff
22   said, "Yes, but there are still holes, meaning there's
23   still things that are going to come up until I get
24   familiar with the different functions of the
25   Apps, it's a lot to learn."
26

27       7. Friday November 8, 2019 approximately 6:40am,
28   I the Plaintiff was assigned to the Semi-Auto

Plaintiff's Complaint
CV-127 (09/09)       PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

1   on side 2 of the Apps. During standup Supervisor
2   Maryhelen Campos told us to make plenty of boxes
3   because we were going to need them. When I the
4   Plaintiff asked Maryhelen if she had a box-cutter,
5   she said in a very mean tone of voice, "YOU DON'T
6   NEED A BOX-CUTTER, YOU NEED SCISSORS, RIGHT?!"
7   I the Plaintiff said, "Yes." Supervisor Maryhelen said
8   "THEN I'LL GET THEM AND CUT IT FOR YOU!" This
9   behavior was uncalled for no one told me any
10  rules about box-cutters or scissors on the
11  workroom floor. Whenever I the Plaintiff try to
12  talk to my Supervisor Maryhelen, she would
13  cut me off, talk loud so that I will just give
14  up. One day after Supervisor Maryhelen
15  called lunch break, Maryhelen yelled at
16  me so viciously, her face started jiggling and
17  her eyes seems like they wanted to pop out,
18  she looked so evil. I remember - I told her, "Hey
19  Mary I turned off the Semi-Auto so the mail
20  won't fall on the floor while on lunch. I felt it
21  was a small belt where the camera was, it
22  isn't going to affect the other part of the machine,
23  because Supervisor Maryhelen said that I was
24  in control of that area. But I guess I was wrong
25  Supervisor Maryhelen was running the machine
26  as a sport against the other warehouses, by
27  keeping her numbers up. that day. Which she
28  ran the machines none stop that day.

Plaintiff's Complaint

14

Page Number

CV-127 (09/09)            PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

8. Throughout my entire 5 months and 13 days Mail Handler Pamela Harrison targeted me with petty, and rude behavior snatching placards out of my hand, forcing placards in my hand aggressively, yelling at me saying things like "What!" "No!" bullying me yanking equipment out of my hands, disrespecting me by making me have to demand my placards from her because I the Plaintiff was responsible for the mail going out to dispatchers. Treated me unfairly and different from the rest. When there was a new female (White or Hispanic) with tan colored skin she trained her and was very kind and respectful towards the newly hired employee. Coworker Pamela Harrison attempted 3 major attempts to cause me the Plaintiff bodily harm with the (USPS equipment) threating my safety. I th. Plaintiff ask Pamela Harrison to stop targeting and harassing me, but it only continued which I thought it would go away after numerous complaints to Supervisor Maryhelen Campos but the problems only got worst due to Supervisor Maryhelen failing to Act because the problems persisted. Mail Handler Pamela Harrison, is a White female with white skin and I the Plaintiff is black with reddish brown skin.

9. When I would complain to Supervisor Mark

15

Plaintiff's Complaint

Page Number

CV-127 (09/09)    PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

1   Clark he would just listen about my complaints
2   of being bullied and targeted by Supervisor Maryhelen
3   Campos and Pamela Harrison, he said "Mary
4   would bully you if you let her." On a different
5   day Supervisor Mark Clark said, "You better
6   put something in writing to the Union before
7   something happens." I the Plaintiff followed
8   through on his suggestion about the bullying.
9   On November 15, 2019 The National Postal
10  Mail Handlers Southern California Union AFL-
11  CIO Local 303, told me they received my Complaint
12  Letter while I was on the phone with the Local
13  Treasurer Van F. Cunningham who then summited
14  to Local President Eddie Cowan, who then emailed
15  me on November 18, 2019 informing me he received
16  my Complaint Letter. Eddie and I the Plaintiff
17  verbally talked about the problems I was having at
18  work, which on that same morning I started
19  having major issues with Pamela Harrison
20  made her first attempt to cause me physical
21  harm.
22
23      10.  On November 18, 2019 Monday approximately
24  11:30 am, I noticed while I was working on the
25  Semi-Auto which is up high where I the Plaintiff can
26  visually see around the whole Apps department,
27  that Supervisor Maryhelen Campos was sharing
28  something with Co-workers on her cell phone. I the

1  Plaintiff do not know of what Supervisor Maryhelen
2  was sharing. But right after co-worker Pamela
3  was done viewing whatever was on Maryhelens
4  cell phone. Pamela went into an extreme rage
5  completely out of control and grabbed a
6  pallet-jack, and pushed it so hard and
7  aggressively letting go of it, sending the pallet
8  jack rolling out of control towards me the
9  Plaintiff, barely missing my ankle and slammed
10  into a box in front of me. This was co-worker
11  Pamela first retaliatory act of attempt to cause
12  me the Plaintiff bodily harm. Supervisor Mary-
13  helen Campos stood right there watth the whole
14  thing and said, "Calm down Pam, Calm down". and
15  that was it and Pamela stormed off stumping
16  her feet after acting very reckless,

17

18     ii. The week of January 6-10th 2020 I don't
19  remember the date the approximate time after
20  lunch which is 12:30pm possibly Thursday or
21  Friday. Co-worker Pamela Harrison was assigned
22  as the Loader on side 2 of the Apps. I the
23  Plaintiff and co-worker Olga Perez was assigned
24  to the Culler-Belt. On this day, was like no other
25  Pamela had loaded a very unstable and unsecure
26  pallet onto the Dumper. I the Plaintiff noticed
27  that Olga was on Pamela side instead of working
28  with me on the Culler-Belt. As they raised the 3rd

1   Dumper in the air, which is the one on the end
2   that can carry very tall and very heavy loads.
3   I noticed something wasn't right about this load,
4   there was a postal pack (box) seemed to have
5   been cut in half and placed on top of this
6   massive load about 7' to 8' feet tall, carrying only
7   five small light packages to camouflage the
8   dangerous unstable load underneath. On the
9   pallet behind the box was a giant stacks of these
10  huge cardboard election flyers that had very
11  sharp edges. The small box had shifted a little
12  to my left. That's when Pamela hit the control
13  button sending the heavy load like a ton of
14  bricks flying down while I was in front of it with
15  only a split second to get out of the way. Which
16  I the Plaintiff made it, with my quick reflex
17  and Jehovah God's protections helping me with
18  my quick thinking and acting on that bad feeling
19  I felt about that load, I was able to dodge out
20  of the way of this massive avalanche of mail.
21  The female Co-workers were laughing at me and
22  looking at me evil the whole day. Which I began
23  to believe that the incident was intentional. The
24  very next day I told Supervisor Maryhelen Campos
25  about what happened, and that I was no longer
26  going to work on the Culler-Belt, I told her I
27  the Plaintiff refuse to put my safety in someone
28  else's hands. Supervisor Maryhelen Campos Failed to Act

Plaintiff's Complaint

_18_

CV-127 (09/09)                PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

1  because the problems with co-worker Pamela
2  Harrison persisted going from bad to worst
3  to the point I was afraid to show up to work
4  in fear of my life. this caused me to sink
5  into a deep depression, crying uncontrolably
6  on breaks and whenever I the Plaintiff tried
7  to sleep at night.

9      12. There was no reason for co-worker
10  Pamela Harrison to have this much or so much
11  hatred in her heart for me.; I DID NOT KNOW HER!
12  I the Plaintiff just know im black and Pamelas
13  Caucasian (white) she looks way older that me.
14  She would look at me in disgust, treat me like I
15  was stupid, make rude mean faces at me, and
16  offen petty behavior and undo work I the Plaintiff
17  completed. Supervisor Maryhelen would
18  target me by throwing my finished work
19  on the floor then demanding I the Plaintiff
20  pick it up. This happen a few times, I
21  even asked her to "stop, can you go back
22  to where you were at, you're making my job
23  harder." Because I was very organize with
24  exceptional work ethics, I the Plaintiff felt
25  Supervisor Maryhelen didn't want me working
26  there at the Post Office.

28      13. On January 15, 2020 Wednesday at

Plaintiff's Complaint
CV-127 (09/09)          PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

1  approximately 8:45am, I was clearing out the sacks
2  from the equipment APC's and Wire-Containers
3  for use during morning shift. When I the Plaintiff
4  began walking back to the area where I stored
5  the other empty equipment, where they're normally
6  staged. Pamela had grabbed one of the APC's
7  which are very tall 7' to 8' feet tall and I
8  believe made of metal with wheels. Pamela
9  Harrison forcefully pushed the APC and
10 let go of it, sending it out of control my way
11 slamming into another equipment which made
12 a very loud metal to metal sound. Then Pamela
13 grabbed the APC that I was pushing an aggre-
14 ssively started yelling at me. I couldn't
15 understand her that well, because I was
16 confused of why she was yelling at me. I the
17 Plaintiff then got closer to her and Pamela said
18 very loud and aggressively, "DON'T PUT THIS OVER HERE
19 I'M TRYING TO MAKE ROOM FOR THE MORENO VALLEY'S."
20 I the Plaintiff said, "Okay, but why are you yelling
21 at me?" Pamela just storms away angry. I the
22 Plaintiff thought about making a complaint to
23 Supervisor Maryhelen Campos about Pamelas
24 third attempt to cause me the Plaintiff
25 bodily harm, at this point I had it with Pamela
26 and Supervisor Maryhelen. I quickly decided to take
27 matters into my own hands, since my multiple
28 complaint of co-worker Pamela Harrison continue

Plaintiff Complaint

CV-127 (09/09)          PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

1  and was always ignored. I the Plaintiff told
2  co-worker Pamela Harrison firmly, without
3  threating her, I mean it may have shocked
4  her to see I finally was standing up for myself.
5  My exact words to Pamela, "I'M NOT GOING TO
6  F--k YOUR MAN, I'M NOT GOING TO F--k WITH YOU,
7  LEAVE ME THE F--k ALONE!" I the Plaintiff calmly
8  walked away and continued working, although I
9  was still very much aware that I the Plaintiff
10  was highly upset that it had come to this
11  escalating to the point of an altercation, had
12  Supervisor Maryhelen acted on her leadership
13  responsibilities this could have been avoided.
14  I the Plaintiff Kept to myself. The witnesses
15  were Olga Perez, Karina Cabada, and Genevieve
16  Turner all three did not like me, the Plaintiff,
17  the females co-workers didn't know me but
18  yet disliked me. Pamela and the three witness
19  complained to Supervisor Maryhelen reporting
20  that I made threats to co-worker Pamela
21  Harrison which ___ is falsely stated in their
22  report about the incident. Supervisor Maryhelen
23  immediately escorted me the Plaintiff to
24  the office without investigating both sides
25  she threaten me with a "EP Emergency Place-
26  ment 16.7. Not once acted on my complaints
27  of Pamela Harrison. Theresa Leon a Union Rep.
28  told me, Supervisor Maryhelen was going to fire me. Out

1  of fear of being terminated, I the Plaintiff
2  resigned. I was told I the Plaintiff had 24 hours
3  to withdraw my resignation, with the help of
4  the Local Union Treasurer Van F. Cunningham
5  who faxed and mailed same day of resignation.
6  When I called Human Resources Share Services
7  at 10:15am and spoke to Karmin Ellis and
8  she told me they never received it and
9  instructed me to email the complaint to.
10  GYFVDR.usps.gov. But nothing further happen.
11  During the time in the office with Maryhelen
12  the Supervisor and Union Rep Theresa Leon
13  I the Plaintiff reminded Supervisor Maryhelen
14  Campos of the Multiple complaints about co-worker
15  Pamela Harris, Supervisor Maryhelen kept avoiding
16  my questions when I the Plaintiff would say
17  what about the time when "Pamela attempted to harm
18  me, and when she would harass and bully
19  me you never once acted on my complaints."
20  Supervisor Maryhelen just said "stay on the
21  subject." (repeatedly) Even the Union Rep. Theresa
22  Leon told me to "stay on the subject." Both the
23  Hiring manager and the Union never gave me any
24  any handbooks on policies, harassment in the
25  workplace or how to file a Grevence or when
26  to file. At the very beginning of my employment at
27  United States Postal Service I the Plaintiff was inform that
28  Supervisor Maryhelen and Pamela were bestfriends (2 CFR § 200.112 Con-

22

Plaintiffs Complaint

CV-127 (09/09)      PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

1  flict of Interest) which was played out directly in front
2  of my eyes. Supervisor Maryhelen never once
3  discipline co-worker Pamela Harrison each time
4  I the Plaintiff complained. I the Plaintiff took
5  notice of how everyone (Kissed-up) to co-worker
6  Pamela Harrison. Co-worker Norman Fletcher
7  told me that she has even hit him in his face,
8  at a time she was acting reckless and nothing was
9  done about it, because of her close relationship, Pamela
10  Harrison have with the Supervisor Maryhelen
11  Campos. When Supervisor Maryhelen Campos found
12  out I the Plaintiff had stood up to co-worker
13  Pamela to stop her violent behavior towards
14  me. Supervisor Maryhelen wasted no time in
15  rushing me to the office to send me the Plaintiff
16  home, knowingly I the Plaintiff made multiple
17  Complaints to her about co-worker Pamela Harrison
18  trying to harm me physically but Supervisor Mary-
19  helen ignore every complaint given about her
20  best-friend. Which Supervisor Maryhelen decision
21  and actions towards me were unfair and
22  unjust throughout my time of employment and
23  in January 15, 2020. This type of friendship
24  in the workplace is against the CFR professional
25  conduct under the law (2 CFR § 200, 112
26  conflict of Interest). Supervisor Maryhelen Campos
27  was partial when it came to co-worker Pamela she
28  could do no wrong favoring her, instead of being impartial.

Plaintiff's Complaint

23

CV-127 (09/09)                PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE

As against Defendant (S):

Duties:

14. The allegations of each of the proceeding paragraphs are realleged and incorporated herein by reference.

15. Defendants Louis DeJoy, Postmaster General, and the United States Postal Service (USPS), (p1-13), owed Plaintiff, Lisa R. Jackson a legal duty to ensure the safety of the Plaintiff, By providing a secure a safe working space to work productively

16. Defendant's Louis DeJoy, Postmaster General, and the United States Postal Service (USPS), (para 1-13), owed a legal duty to use due care to the Plaintiff by acting and taking major steps to ensure the Plaintiff of zero tolerance for bulfying, and targeting their employees. The (Title VII Civil Rights Act of 1964) (Title 5, CFR-Title 5 part 4 Rule IV 4.2)

17. Defendant's Louis DeJoy, Postmaster General,

and the United States Postal Service (USPS) (para 1-13)
owed a legal duty to the Plaintiff to prevent
discrimination of any sort, such as racism, color of
skin. Action may included some form of discipline
such as write ups, a warning, suspension or
termination if employee or employer fail to adibe
by the rules set forth. (CFR-202-title 5, (Title 5 part 4
Prohibited Practices Rule IV 4.2) (28 FR 10024 Sept 14,1963)

18. Defendants, Louis DeJoy, Postmaster General
and the United States Postal Service (USPS) (para 1-13)
owed a legal duty of care to the Plaintiff to provide
functional workplace free of hate crimes and
violence of any sort free of attempts to cause
bodily harm. Under (Title 5) management is to
ensure that all it's employees receive a
Handbook of the workplace policies and no
tolerance of harassment of any kind (Publication 552)

19. Defendants Louis DeJoy, Postmaster
General, and the United States Postal Service (USPS)
(para 1-13) owed the Plaintiff to exercise appropriate
and/or ethical ruled care expected under specified
circumstances, by not himiliating or embarassing
Plaintiff in front of the whole body of co-workers
Standing, instead the employer should have called
me to her office, current station and specific area
in a private setting alone (41 CFR § 60-20.8 Harassment and

Plaintiff Complaint

25

CV-127 (09/09)                    PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

hostile work environments.)(CFR§ 60-20.8 (3a)

20. Defendants Lous DeJoy Postmaster General, and the United States Postal Service (USPS)(para1-13) owed to the Plaintiff an obligation to take reasonable care to protect Plaintiff from all reasonably forseeable risk of harm (Policy 4.1) Supervisor Maryhelen Campos was clearly aware of the forseeable risk and should have acted immediately to avoid further impact or danger.

21. Defendant Louis DeJoy, Postmaster General and the United States Postal Service (USPS)(para1-13) owed Plaintiff a legal duty of due care by treating all employees fairly (2 CFR§ 200,112 Conflict of Interest) and keep all personal relationsphips separate in order that there is no signs of favorablity among Supervisor and employee.

22. Defendant Louis DeJoy, Posmaster General and the United states Postal Service (USPS,)(para1-13) owed Plaintiff a legal duty of care by investigating without favoritism of what took place on January 15, 2020 between Co-worker Mail Handler Pamela Harrison and the Plaintiff, (5 C.F.R § 2635.10(b)8 and(14) Supervisor Maryhelen should have exercised her use of her position as a Supervisor defuse the problems by taking the necessary actions governed by C.F.R. Laws.

26

Plaintiff's Complaint

*Breach of Duties:*

22. Defendants, Louis DeJoy, Postmaster General, and the United States Postal Service (USPS) (para 1-13) breached the duties it owed to the Plaintiff, Lisa R. Jackson, by permitting its conduct to fall below the required standard of care. (Part 3 of the Civil Liability Act 2002 (NSW) (Wicks v. SRA (NSW); Sheehan v. SRA (NSW); Australian case of Tame v. State of New South Wales; Annett v. Australian Stations Pty Ltd 2002.) (OSHA 29 C.F.R. 1910)

23. Defendants, Louis DeJoy, Postmaster General, and the United States Postal Service (USPS) (para 1-13) breached the duties owed to the Plaintiff by failing to exercise due care (29 C.F.R. § 1904) (See Manager's Guide to Understanding Investigating and Preventing Harassment Guide (USPS) Publication 552), received from the EEOC)(OSHA 29 CF.R. 1910, Title VII Civil Rights Act 1964.) in preventing bullying, harassment and targeting. Supervisor Maryhelen Campos Failed to Act whenever I the Plaintiff desperately begged her to act, instead allowed co-worker Pamela to continue targeting me creating a hostile work environment and very unsafe workroom floor, — as Supervisor Maryhelen Campos was aware that co-worker Pamela Harrison was allowed to use the United States Postal Service equipment as a weapon, and attempted three major times to harm Plaintiff physically.

Plaintiff's Complaint

CV-127 (09/09)    PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

24. Defendant's, Louis DeJoy, Postmaster General, and the United States Postal Service (USPS)(para 1-13) breached their legal duty owed to the Plaintiff (Title VII CIVIL RIGHTS Act of 1964)(Gagon v. Sprint Corp. 284 F, 3d 839, 850 (8th Cir.) Cert denied, 537 U.S. 1001.(123 S. Ct. 485, 154 L. Ed. 2d 396 (2002). Supervisor Mary-helen Campos was not impartial towards Plaintiff and Mail Handler Pamela Harrison, instead was partial and unfair by displaying favoritism whenever real issues needed to be address immediately. (20.F.R. § 200, 112 Conflict of Interest). Supervisor Maryhelen Campos was very stubborn and reluctant to discipline her bestfriend and employee Pamela Harrison, by ignoring every complaint against Pamela Harrison from August 2019 through January 13, 2020. Supervisor Maryhelen Failed to Act on much need issues, which allowed the problem to continue. Pamela became bolder and bolder in her actions knowing she would not be punished for it.

25. Defendant's, Louis DeJoy, Postmaster General and the United States Postal Service(USPS)(para 1-13) breached their legal duty owed to the Plaintiff by not upholding her responsibilities as a Supervisor (From the EEOC - Manager's Guide to Understand Investigating and Preventing Harassment Publication 552) The hiring manager nor did Supervisor Maryhelen Campos see to

Plaintiff's Complaint

28

Page Number

PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

CV-127 (09/09)

1  if that I the Plaintiff received any Handbooks
2  on their policy's or rules or any guideline
3  information to help me to stay informed of
4  the post office rules. Instead Supervisor
5  Maryhelen violated the Guidelines set forth
6  in the (Publication 552) on preventing harassment
7  and to investigate any serious issues. Super-
8  visor Maryhelen is and was at the time of
9  incident was well aware of her role as a
10 leading Supervisor who is responsible for
11 her employees safety and preventing a
12 hostile work environment (5 C.F.R Subpart G-
13 Misuse of Position.) Supervisor Maryhelen violate
14 her position by misusing her power and
15 threating me the Plaintiff with a harsh punish-
16 ment of an E.P. Emergency Placement 16.7.
17 without investigating what lead up to Pamda
18 Harrison and Plaintiff's altercation January
19 15 2020, on Wednesday morning.

21  24. Defendant's Lovis DeJoy, Postmaster General
22 and the United States Postal Service (USPS)
23 (para 1-13) breached their legal duties to the
24 Plaintiff by violating (41 CFR§ 60 - 20.8 Harass-
25 ment and a Hostile work environment) their
26 responsibilities of exercising due care an acting
27 appropriately under ethical rules. Supervisor
28 Maryhelen himiliated and embarrassed me the